WILDE v. THE MERCHANTS' DESPATCH TRANSPORTATION CO.

1. **Common Carrier**: LIABILITY OF: CONTRACT. The defendant received from plaintiff's consignor at New York a package marked "Iowa City," giving at the time a shipping receipt which entitled the consignor to a bill of lading; some days afterward it issued the bill of lading, purporting to undertake to carry the package to Chicago only, knowing that the consignment had meanwhile been destroyed *in transitu* at Chicago: *Held*, that the carrier was liable as at common law, notwithstanding a restriction contained in the bill of lading.

### *Appeal from Scott District Court.*

### THURSDAY, DECEMBER 6.

ACTION to recover of the defendant the value of certain goods which it, as a common carrier, received at New York, and undertook to deliver, as the plaintiff claimed, at Iowa City. The defendant, while admitting the receipt of the goods, claimed it only undertook to carry them to Chicago, where the goods, without fault on its part, and after the contract of carriage had been performed, were destroyed by fire. The defendant further claimed that, under the bill of lading, it was exempted from loss by fire. The cause was tried by the court, no finding of facts was made, but a judgment was rendered for the plaintiff, and defendant appeals.

*Stewart & White*, for appellant.

*Martin, Murphy & Lynch*, for appellee.

SEEVERS, J.—On the 2d. day of October, 1871, the goods were delivered to the defendant by the cartman of A. T.
1. COMMON carrier: liability of: contract. Stewart & Co., to whom the following shipping receipt was given: "New York, October 2, 1871. Received in good order from A. T. Stewart & Co., on board P. D., lot 8469, the following packages, viz: One case D. goods, marked J. Wilde, Iowa City." On the same day the goods left New York in Blue Line car 3148, and arrived at Chicago about "six o'clock on the morning of the 8th. day of

October." The goods were unloaded and placed in a warehouse, and were destroyed by fire on the morning of the next day.

On the 19th day of October, 1871, the aforesaid shipping receipt was delivered to the defendant, and a bill of lading given to the consignors, which bound the defendant to transport the goods to "Chicago depot only," and contained a clause exempting the defendant from loss occasioned by fire.

No contract for the carriage of said goods was entered into at the time the goods were delivered except such as may be inferred from the shipping receipt and conduct of defendant, and the custom and usage of the defendant, known, understood and acquiesced in by the consignors, if any such there was.

The uniform custom of defendant was not to issue bills of lading when goods were delivered, but to give a shipping receipt on presentation of which a bill of lading was issued. The clerk signing such receipts had no authority to make contracts for the defendant. "The object in giving these receipts was to enable the shippers to get bills of lading; amid the confusion of the receiving depots, bills of lading could not well be made out and given; experienced clerks were required for this business." The bill of lading was the only kind issued by the defendant during the year 1871.

The cartman who delivered the goods had been in the employ of A. T. Stewart & Co. for about six years, carting and shipping goods for them by the defendant. There was no evidence tending to show that the plaintiff or the consignors knew the goods had been destroyed at the time the bill of lading was issued, but there was evidence tending to show that the defendant had such knowledge. There was no evidence tending to show the nature or extent of the shipments over defendants line, made by the consignors. Nor was there any evidence tending to show that the consignors had any knowledge of the custom or usages of defendant, or of the kind or conditions of the bills of lading issued by the defendant during 1871, other than the knowledge possessed by the cartman. He states: "It was my custom in delivering goods for shipment to present to the carrier a shipping receipt in

duplicate for signature. I did so in shipping the goods in question. * * I expected the goods to be carried to Iowa City. Nothing was said to me by defendant about its line terminating at Chicago." The witness further testifies that he had no knowledge that defendant was in the habit of issuing such bills of lading, and that he never consented that any such should be issued.

The shipping receipt was delivered by the witness to one Montgomery, a clerk of the consignor, but his evidence is not before us.

This cause is not triable anew in this court; therefore the finding of the court below has the force and effect of a verdict of a jury, and the court was justified in finding under the evidence:

1. That the defendant received the goods, and undertook to carry the same to Iowa City.

2. That it entered upon the discharge of its undertaking, and that the goods were destroyed before any bill of lading was issued.

3. That neither the plaintiff or consignors had knowledge of the existence of any custom or usage as to the issuance of bills of lading which would exempt the defendant from loss by fire or would terminate on delivery of the goods at Chicago, and also that defendant had knowledge at the time the bill of lading was issued that the goods had been destroyed, and that neither the plaintiff or consignors had such knowledge.

The only possible dispute must be confined to this last proposition, and under the uniform rulings of this court, as to the force and effect of a verdict of a jury, or the finding of a court, we are clearly of the opinion there can be no serious doubt as to that. This we think will be so apparent from the foregoing statement of the material portions of the evidence as to relieve us of the necessity of taking time to state the reasons for our conclusion. It is equally apparent, if we are right in this, that the judgment below must be affirmed. The case of *Shelton v. Merchant's Despatch Transportation Co.*, 59 N. Y., 258, is not identical with this, as is claimed by the counsel. In that case the goods were delivered to the defendant on the

second day of October, 1871, by H. B. Claflin & Co., at New York, the consignors, and similar receipts to the one in question taken. On the third and fourth day of October the receipts were delivered to the defendant and bills of lading taken in place thereof. The points of difference are: 1. It does not appear whether the goods had left New York before the bills of lading were issued. 2. The goods had not been destroyed at that time. 3. There was evidence tending to show that "Claflin & Co. were, on the said second day of October, 1871, and for a long time previous thereto had been, large shippers of goods by the defendant's line, and that it had always been their custom to obtain receipts or bills of lading therefor." The referee to whom the cause was referred refused to consider the testimony last mentioned on the ground that it was not material, but the court held otherwise. Now it may be conceded that the contract may be varied or controlled by uniform custom and usage, known to and acquiesced in by both parties, and yet, as will readily be seen, the case at bar remains unaffected thereby.

AFFIRMED.